Ready to hear argument in the case of Thornley against Clearview. This is Judge Easterbrook. I'm participating as a disembodied presence. You can see the other two members of the panel. Mr. Burlow, please proceed. Thank you, Your Honor, and may it please the court. Again, Clifford Burlow on behalf of Clearview. Your Honors, in this case, the district court held that because the plaintiffs had affirmatively alleged that they had not suffered any injury, that there was not Article III standing for their class action complaint to proceed in federal court. That decision was wrong, and the court should reverse it. And it's wrong because the plaintiffs, when their allegations are viewed as a whole, when the entire complaint is read, it is very clear that they are alleging that they have suffered a wrong that is both concrete and particularized. The harm that they claim to have suffered is concrete for the same reason the harms that were alleged both in Fox and in Bryant, as well as what was alleged in the Ninth Circuit's decision in Patel were concrete. Namely, that the Illinois biometric privacy statute, BIPA, gives individuals control over their own biometric information. There is, in essence, a possessory interest that Illinois recognizes over an individual's biometric information and identifiers. Do we know, Mr. Burlow, do we know whether the plaintiff's information has been sold, leased, traded, or otherwise been the subject of a profitable transaction? Your Honor, I can say that we know that at least one of the three plaintiffs is included in the Clearview database, and that there are photographs and information about that individual who have been incorporated, and there has been a facial vectoring performed on at least one of the plaintiffs. What the plaintiffs have alleged here is that they have reason to believe that they have been included in there, and we indeed have confirmed that at least one of them has been. But of course, nothing has happened yet. One of the cases that these facts made me think of is the clapper against Amnesty International, where things were happening, but there was nothing concrete to show that it had happened to these particular people. And of course, as we've been reminded by Spokio and Thole and all sorts of other cases, we need injury, in fact, that's both concrete and particularized. Well, so, Judge Wood, I think there are two answers to that question as it relates to clapper. I do think there's a distinction here between clapper, where you have speculation piled upon conjecture before you get to any harm. Here, I think there are— Well, that's what the court said, but let me say a more charitable view. If you read the briefs in clapper, was that people were perfectly aware that their long-distance— their international telephone calls were being monitored. They just didn't know which ones, but it had a chilling effect on all of them. Well, certainly, Judge Wood, and that was certainly the view of the sentencing justices in that case. But I do think that here you have something that's slightly different, and perhaps it would help if I began by explaining a little bit, drawing at least from the allegations in the complaint, explaining what exactly it is that is going on here with Clearview's database. The way the database— Counsel, sorry to interrupt again, but why isn't it sufficient to say that the plaintiff is master of the complaint? Master of the complaint can decide what jurisdiction it will appeal to, and our plaintiffs have decided to appeal to a form of jurisdiction available in state court but not federal court. And the doctrine the plaintiff gets to choose these things is pretty longstanding. Why doesn't it control? Well, Judge Easterbrook, and Judge Wood, I will come back to answer your question, but Judge Easterbrook, I think the answer to your question is that just as a plaintiff cannot allege that there is an injury and therefore there is Article III standing, a plaintiff cannot similarly allege that there is no injury and therefore there is no Article III standing. I think the court has a long— The question I'm asking is why. I mean, suppose plaintiffs say, we don't object to our pictures being in the public domain, but we object to capitalist transactions among consenting adults because we are followers of Karl Marx. And the problem in this case is that capitalist transactions have occurred. We don't think that that injures us except ideologically, and there we are. You're sincerely the plaintiffs. Why isn't that all we need to know? Judge Easterbrook, the answer to that question is that the statute gives them a possessory interest over their biometric information, regardless of how it makes them feel, and there has been, under their theory, there has been an intrusion— Look, I don't think you're addressing my question. Suppose we read their complaint as saying, we have this interest. We are delighted to have this information seen by all 350 million people in the country, but we are communists. We don't want it sold. You're sincerely the plaintiffs, right? Is that a case litigable in federal court? I believe it can be litigated in federal court. And the reason, Judge Easterbrook, is that the plaintiffs would be alleging that there has been a harm to their concrete interest in that case. There isn't any concrete interest, as I've described it. The interest is ideological. We don't like market transactions. It's not that we're injured by them. It's that we don't like them. That's the question I'm trying to get you to confront, and you're not really confronting it. Well, Your Honor, I think the reason that they would have a claim in the first place is because of the Illinois statute that gives them the right to control their information and how it's disposed of. And if you allow someone to dispose of that information in a way that's for profit, that's what's forbidden. That's why they're able to state a cause of action in the first place. And, again, it's the intrusion into that possessory interest that is what gives them a claim, and that is the harm that is sufficient for them to be in federal court. And as a matter of CAFA, we are given the right, if there is something that can go to federal court as a constitutional matter and all of the other Class Action Fairness Act requirements are satisfied, that we can choose to litigate that matter in federal court rather than the plaintiff's chosen forum in state court. Judge Wood, to come back to your question on whether this is too speculative a harm, I think, again, going back to how this database operates is, in the first instance, sort of explains this. The way this works is that these photographs are downloaded off the public Internet, and there's a process called— Scraped, right? Scraped is the term.  And there is a practice called facial vectoring that is performed of all of these materials, and those facial vectors go into a search engine. When a user then comes along to file— I'm familiar—I mean, I hate to cut you off, but time is short. I'm quite familiar with that, but what I'm trying to get at, I'm looking at 15C, and all it says is no private entity in possession of a biometric identifier. And I take it we all are content for present purposes to call this—to call the digital information that is derived from the photographs biometric identifiers. I think there might be some questions. I'd be remiss, Judge Wood, if I didn't say we probably would raise an objection to that on the merits, but for present purposes, I think— At the moment, we're letting that be. Okay. And it's just a statutory point. But anyway, it just says that I don't see anything talking about people being able to control these transactions. I don't see anything about them getting a share of the money. I don't see anything about Judge Easterbrook's hypothetical about just, you know, we don't want you dealing and making money off of our personal retinal scans or whatever, the metadata on our photographs. It just says you can't sell, lease, trade, or otherwise profit. And apparently what the Illinois legislature was doing was trying to shut down this market. That seems like a general public act to me, not something particular to any individual in the database. Well, Judge Wood, I disagree, and I think it goes back to—and I think what's helpful is to go back to the Rosenbach decision from the Illinois Supreme Court, which says that through all of these Section 15 provisions, their words were the General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers. One of the ways that that control is exercised is forbidding a private entity from coming along and selling the biometric identifiers themselves. But as you will agree, if you look at Bryant, there are some provisions of the law that are just so broadly directed to the public, you know, publishing your data retention policies and having these things in place, that there is no individual right to sue about that. There's no Article III standing there. Other things are different, so you have to look at each one. Well, and the court said that with respect to that 15A claim, that that cause of action was not particularized. And I think here it very much is because the plaintiff's whole theory about why they are statutorily aggrieved is that their information is contained within the database. And so it is their information that is being used for profit against their will. But they're speculating that their information has been used. They don't know. Well, Your Honor, certainly they've alleged that they have a good faith basis to believe that it's all included, it's all incorporated. Excuse me, counsel. I thought the theory here was that the plaintiff's data is in the database adding to its value. That is, the reason this database is worth anything to anybody is because it has 3 billion images in it, not a half a dozen, right? Yes, that's right, Judge Hamilton. Okay. Let me ask you if I could, Mr. Berlow. It's pretty well established, as I understand the law, that in, say, diversity cases, a plaintiff's binding pre-removal stipulation, that she will take no more than $75,000 in damages, is sufficient to defeat removal even if a claim could be made or even any reasonable damage demand would be for more than $75,000. Why is this different? Well, I think it's different, Judge Hamilton, for the reason that what the plaintiffs have alleged here is that they have no injury except that they have been statutorily aggrieved. And I think our argument is that when you are statutorily aggrieved under Section 15C, that you, by definition, have suffered a harm that is cognizable as a matter of Article III of the Constitution, that the two really go hand in hand. And again, it's because of this invasion, this intrusion on this right not to have your information sold. One of the problems, I guess one of the things that I'm struggling with in this case is that this is not a typical kind of injury. This seems to be much more along the lines of unjust enrichment or maybe something more akin to a copyright or patent infringement in the sense that the plaintiff can't point to being out of pocket any money, can't point to very specific harm, except that a right has been taken away, has been used for profit by someone else. Is that the right way to think about this, do you think? Judge Hamilton, I think there is something to that. I also think of it as being akin to a right of publicity claim. That's what I mean, yeah. Right. I mean, but I do think that and that is very much a real and tangible harm when you've had your right of publicity invaded and the federal courts have exercised jurisdiction over those claims for a number of years now. Let me raise one concern that I have, particularly when the roles of the parties are flipped the way they are in this case. Suppose we agree with you, reverse, send it back to the Northern District of Illinois for litigation, the plaintiffs win, and the defendant then decides to appeal arguing lack of standing. Can you give us any assurance that that would not happen, particularly since it's a jurisdictional issue? I would imagine judicial estoppel would preclude us from doing that, Judge Hamilton. I'm not sure that it would on a jurisdictional ground, and it's something that worries me. Well, I think it might prevent us from making the argument. Would it prevent the court's response from reaching its own conclusion should a different panel be convened? That I can't say. I would tend to agree with you in that circumstance, but I do think we're not going to be allowed to talk out of both sides of our mouth. Well, parties do that on jurisdictional issues from time to time and get away with it. They do. I don't know that I have ever tried that myself, but I would imagine that the court would probably not react well. I've seen it also lead to sanctions, but it may or may not affect the merits. That's certainly true. I've seen it well into my rebuttal time, unless there are any other questions at this moment. One other quick question is, do you think the statutory damage number in the Illinois Act is a mandatory minimum, in essence, or is there room for judicial discretion in deciding what the amount per violation should be? Yeah, Judge Hamilton, in candor, I have not given that much thought, and I have not reviewed the precedent from Illinois, so I'd be a little hesitant to go out and answer the question. Counsel, since we asked you a lot of questions, I will give you two minutes for rebuttal when the time comes. Thank you. Good afternoon, judges. I want to pick up on something that Mr. Berlow just said in response to one of the questions. He said, by definition, a violation, an allegation of a violation of the statute creates Article III standing, and that is exactly, precisely what the Supreme Court has said is not the case and what this court has said is not the case. In any instance where a claim is based on a statutory violation, whether it's procedural, whether it's substantive, whether it's personal, whether it's public, in any instance, both the Supreme Court and this court have said, there must be allegations supporting... I understand, Mr. Gallo, but I had understood his point to be that the alleged violation of this statute necessarily carries standing with it because of the individual interest in one's own biometric information. Yes, I understand that, too, Judge Hamilton. I don't see how that's a procedural, a so-called bare procedural violation of Spokio. Well, the issue, Judge, is... And I agree that the defendant's position here is not a bare procedural violation claim, but the cases have moved away from focusing on procedural versus substantive, and that's the series of cases that the Seventh Circuit issued in December made clear that these principles apply, the principle that there have to be allegations of specific harm, actual harm to the plaintiff. They apply whether it's a procedural or a substantive violation. Mr. Golub, let me ask you this question. I think we can agree that a person's private information is, in a sense, an asset of that person, and what Subpart C could be read to do is essentially just to shut down the outside market in sales of, as the statute puts it, a person's or customer's biometric identifier or biometric information. So it does get down, even if there are 3 billion of them. It's not 3 billion people, but let's assume all 350,000 people in the United States have this type of information. If BEPA Section 15C shuts down the market, then each of those people now is free to keep confidential, to spread on the pages of whatever blogs they like to write or whatever they have. It becomes theirs again. It's not somebody else selling it. So why isn't that enough to tie it down to a particular person's interest? Well, first of all, there is no consent or notice provision in 15C. 15C is an unqualified, and I agree. Right, shut down the market. Right. We agree that this, in our view, this is a regulatory statute that's saying that the legislature is saying we do not want to have commercial trafficking in biometric data in Illinois. So this is the same as a statute that says no private entity may sell children for adoption. Yes, I agree with that. It's the same kind of concept, and no parent or other person could consent to that. There's no – the defendant is making the argument about exercising control. Well, Section B and Section D of BEPA allow parties to exercise control over how their biometric data is maintained or how it's disseminated. There's no control here. This is – you can't consent to it. You're not entitled to notice. This is a regulatory provision. And the issue is, is there any harm beyond the statutory violation? And what I was trying to say in response to Judge Hamilton's question to Mr. Brullo and now in response to you is, yes, we claim a statutory violation. But the interests, the personal interests in biometric data, in preventing the disclosure of biometric data, in preventing the retention of biometric data in Illinois, which is what BEPA covers, are not implicated in this case. And they're not – Is that because everyone in Illinois has the same interest in your –  No, it's because nothing happened in Illinois. And what happened here was we drafted an original case against Clearview and we revised it once we saw their position in federal court in opposition to the other cases. And what they say is we scraped the photographs, which is probably legal, by the way, because the photographs are publicly available. We scraped them on servers in New York and New Jersey. We converted them to biometric data on servers in New York and New Jersey. When a user – when a user tries to use our software in Illinois, there is no access to biometric data. The user puts a photograph in. The photograph is transmitted to the server in New York. The server in New York – Mr. Golub, Mr. Golub, this sounds like an argument on the merits rather than jurisdiction. It's an argument. Let me ask you the flip side of the question I asked Mr. Berlow. I asked Mr. Berlow why the plaintiff has mastered the complaint can't choose to not argue injury. The flip side is why the defendant, as the party who filed the notice of removal and therefore is the one appealing to federal jurisdiction, can't allege injury. I mean, if you – suppose this were a diversity case and your complaint alleged that you suffered a $70,000 wrong. The defendant files a notice of removal and says the wrong is not $70,000, it's $100,000. We would ask whether the recovery of $100,000 was legally impossible because it's the notice of removal that's the document bringing the case to federal court. So the question I have for you is why we should look to your complaint rather than to the defendant's notice of removal to determine whether there's jurisdiction. Because the plaintiff has the right to frame his theory or her theory as he or she deems appropriate. That's not just federal jurisdiction. Not quite. Remember what Judge Hamilton said in a question to Mr. Berlow. If the plaintiff files a binding undertaking never to accept a cent more than $75,000, that's conclusive. But if the plaintiff just files a complaint that estimates the stakes at less than $75,000, that's not conclusive. And I've looked and I don't find a binding undertaking by the plaintiffs to accept no actual damages. And the reason for that, Judge, is because that's not the procedure in removal situations. In removal situations, the burden is on the defendant to show that there are allegations in the complaint. Excuse me, counsel. The reason that's not happening is because of the standard fire against Knowles case, in which the Supreme Court said that a class representative cannot give such a binding undertaking on behalf of the class members or the class is certified. The question that I have for you about standard fire is whether you think you can use your class definition. Why do you think you can use the class definition to avoid that limitation? Well, the class definition says that the definition says that it's limited to people whose biometric data was not disclosed. And at the risk of arguing the merits again, Judge Easterbrook, the significance of that is if there is no disclosure of biometric data, there is no injury in Illinois. No, it doesn't say that. Now it sounds like you're disagreeing with Fox. Fox held that a transfer can be an Article three injury just because it increases the risk of disclosure. And I understand subsection C to be not only can you not transfer the biometric data, that's another subsection, but you can't transfer it for money. But a transfer for money is a subset of all transfers. And so one would think, based on the conclusion in Fox, that there is an Article three injury unless this complaint or the notice of removal or the two of them together make recovering for any such injury impossible. That's why I'm pursuing my question. OK, avoid it. All right. There are there are there are several responses, all of which are important to that to that question. What's in Fox? There was a specific allegation in the complaint that the 15 a violation that the allegation was you didn't comply with the retention policy that you that you were required to establish. There was a specific allegation in the complaint that as a result of that noncompliance, you had the company had retained the data beyond the retention period after Fox's employment had ended with the company. That was the injury in Fox. The injury in Fox was not a lack of compliance. That was the statutory violation. The injury was that they kept the data when they weren't supposed to. There is no data kept in Illinois by this company. And that's the that is the critical point of of the complaint here. It's the answer to Judge Hamilton's question about whether we're allowed to allege that define the class. And respectfully, thanks to your question. Also, Judge Easterbrook, there is no disclosure of biometric data. The only thing there is a there is a profiting from it, however. Yes, that's the statutory violation. But what this what the the underlying interest in the statute, the concrete interest that was recognized in Bryant was the interest in the invasion of to protect to protect against the invasion of privacy. That's what Patel said. The statute is is is the tort law analog and to give you control by through the information, the notice and consent and the informational rights of control. None of that is implicated here. And there is no disclosure. There is no disclosure anywhere of biometric data. The only thing that's disclosed are photographs so that when we say there's no invasion of privacy, when we say in Illinois. And the reason I'm saying Illinois is because Illinois law talks about extraterritorial application and limits limits statutes when they're when they don't specifically say they are. Here, there's no disclosure of any biometric data in Illinois. There's no disclosure anywhere of biometric data because it's all in their database and all they're disclosing are publicly available photographs, which are not protected by BIPA. So that's why I'm wondering, actually, as I listen to you and look at this class definition, I know that the standards, of course, in Illinois courts for bringing cases of this sort are more lenient than the standards under Article three. But Illinois may have some standards of its own. I wonder if you have tried so hard to allege no injury that you may find yourself with nothing to litigate if you go back to Illinois. Well, I certainly hope not. That wasn't that wasn't our intention. I'm sure it wasn't, but I'm listening to you. The issue is, as we understand Section 15C, a private entity is not allowed to engage in commercial trafficking of biometric data or to profit from biometric data. There's no question in our mind that Clearview has profited from biometric data. That's the statutory violation. So are you making an argument somewhat similar to the one that the Supreme Court entertained in Thole, where the court repeatedly says any way this case comes out, you're still going to be in the same position? You know, in Thole, you were going to get your defined benefit every month, no matter what. And that was one signal that there was really not the appropriate stake on the part of the plaintiffs. Yes, it's exactly a Thole, because no matter what happens, there's never going to be disclosure of biometric data in Illinois. Clearview does not do that. And no matter what happens, there's never going to be biometric disclosure of anywhere because the database doesn't do that. And what Thole said, there's another aspect of Thole that's very significant. And this goes to Judge Easterbrook's question to me. In Thole, after Justice Kavanaugh went through the four arguments for standing and rejected the one that the plaintiffs asserted, he then said, by the way, there's another wrinkle. There's a standing argument that Plaintiffs' Amici have proposed, but we don't have to get to that because that's not the theory of the plaintiff's case. And that goes back, Judge Wood, to exactly what you said in Bryant, which is you look to the theory that was invoked by the plaintiff when you said there was no 15As standing because there was no claim of injury. On that point, Mr. Golub, in Bryant, our decision overrode the plaintiff's choice, correct? Well, Bryant was removed also. Bryant was removed too. Over the objection. So I'm wondering whether Bryant doesn't point against your position, in essence, that we're the masters of the complaint, we get to decide this. Why does that not follow from Bryant? Because there was a specific allegation in the Bryant complaint. This is Allegation 15 that said, as a result of the statutory violation, plaintiffs and others similarly situated lost the right to control their biometric identifiers and information. That was the specific allegation of injury in the Bryant complaint. And that fully supported the 15B analysis that the court employed to say there was standing because, and what the court said was, the right to control the biometric information had been impeded, had been impaired. That hasn't happened here. What's happened here is somebody else is profiting from your client's information, right? Yes, that's the statutory violation. But the rights of privacy, the rights to control it, are not implicated in Illinois because there is never any disclosure in Illinois. And that's how the complaint is drafted. That's why the class is defined that way. That's why the complaint says there's been no disclosure. Not only was there no disclosure, there wasn't even notice. Nobody even knew that this database existed during the class period. There was no disclosure. There was no notice. And there was no invasion. There was no harm to any rights involving biometric data. It is true that there's a statutory violation. But what Larkin says, what all of the cases, the five or six cases that were decided in December of 2020 say is any statutory violation must be supported by additional allegations of injury. What's happening here is the defendant is trying to rewrite. Mr. Golub, I think we have your position. Thank you. Do I hear any further questions? No. All right. Thank you very much. Mr. Berlow. Thank you, Your Honor. And first, the plaintiff is trying to walk a very fine line here. The plaintiff has all but conceded that if the biometric information itself were sold directly to some third party, that there would be a concrete and particularized injury. The argument the plaintiff is making is that because all that has happened is that the fruits of that biometric information has been harvested, has been sold, has been part of a commercial transaction, as Judge Hamilton, you put it, that, therefore, there is no concrete and particularized injury. And respectfully— So, Mr. Berlow, how does this fit in with the definitions in the statute? The statute excludes photographs from the definition of the term biometric identifier. And then it says that biometric information does not include information derived from items or procedures excluded. So, doesn't that force this line on the plaintiffs? This is all information scraped from the photographs, and the photographs are not biometric information. Your Honor, I think that it may be that they're forced to do it by the statute, but it still means that there is a concrete and particularized harm that has existed here because of the way the statute has compelled them to plead their claim. What I would also add here is that the plaintiff here has said that we have no personal interest in having our information sold, or at least the fruits of that information sold. Respectfully, I would suggest that in light of the court's decision, particularly in Fox, which was not part of this consent regime that the plaintiffs really built their case around, that the sale is just like the wrongful collection of the information, the wrongful retention of that information. And it is difficult to see how then the sale of an analysis of that information for profit, if those other two things are very personal, if that last category of claim is not. Thank you, Mr. Berlow. The case is taken under advisement, and the court will be in recess.